**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

QAMIL AVDO,

        Plaintiff,                               CASE NO. 06-CV-13632

-vs-

                                                PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE

MARSHON HOLLINS, et al.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS CENTURY MORTGAGE
COMPANY AND CENTURY LENDING COMPANY, ISAOA, ALTIMA'S
MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, AND V**

Now before the Court is Defendants Century Mortgage Company, Century Lending Company, ISAOA, ALTIMA's (collectively "Defendants") November 8, 2006, Motion for Summary Judgment on Counts I, II and V of Plaintiff's Complaint. (Doc. No. 7). Plaintiff Qamil Avdo ("Plaintiff") filed a Corrected Response on December 22, 2006. The Court held a motion hearing on September 26, 2007. For the following reasons, the Court GRANTS Defendants' Motion for Summary Judgment on Counts I, II and V.

**I.    BACKGROUND**

At the time Plaintiff filed his Complaint on August 14, 2006, he was a resident of Macomb County. (Comp. ¶ 1). Plaintiff alleges that on or before February 21, 2006, he owned the property located at 20181 Cameron Drive, Highland Park, Michigan in fee simple. (*Id*. ¶ 17). On that date, individual Defendants Marshon and Lesly Hollins ("the Hollinses") made a written offer to Plaintiff to purchase the aforementioned property for the amount of $71,000.00. (*Id*. ¶ 18). Defendant

Century Lending Company, ISAOA, ATIMA ("Century Lending"), and Century Mortgage Company ("Century Mortgage") acted as the mortgagees on behalf of the Hollinses. (*Id*. ¶¶ 23-24). Defendant Grace Title Agency ("GTA") acted as the closing/settlement agent in the sale as well the issuer of title insurance. (*Id*. ¶¶ 26-27). Defendants Eva Ayoub, an agent of Defendant A.U.B. Financial Services, LLC, and David Ayoub, president of Defendant Michigan Community International Financial & Trading, acted as real estate brokers on behalf of Plaintiff in the sale. (*Id*. ¶¶ 21-22).

On February 21, 2006, GTA conducted the closing on behalf of Plaintiff and the Hollinses in West Bloomfield, Michigan. (*Id*. ¶ 29). On that date, GTA issued a $67,821.05 check payable to Plaintiff for the amount due for the sale of the property. (*Id*. ¶ 31). Plaintiff paid closing costs in the amount of $2,130.00 on behalf of the Hollinses. (*Id*. ¶ 34). The Hollinses moved into the property at issue on or about February 21, 2006. (*Id*. ¶ 33).

The Hollinses were also responsible for paying $5,805.43 as part of the settlement and in excess of the mortgage amount. (Def. Br. Ex. 4, Line 303). The Hollinses tendered this amount to GTA on February 22, 2007, after the closing. (Def. Br. at 3, Ex. 8, Cashier's Check). On or about March 6, 2006, GTA stopped payment on the check and all monies due to Plaintiff despite Plaintiff's demand that it tender those monies. (*Id*. ¶ 32, Mot. at 3). GTA had discovered the cashiers check tendered by the Hollinses had router numbers which did not match and would not clear. (Def. Br. at 3). Plaintiff alleges that GTA was acting as an alter ego and/or agent of Defendant Century Lending when it stopped payment on the check. (*Id*. ¶ 45). Plaintiff also claims GTA told Plaintiff he was responsible for the closing costs after the Hollinses' bogus check was discovered. (Resp. at 21). After February 21, 2006, the Hollinses continued to reside at the property in question and failed

2

to pay Plaintiff rent as requested. (*Id.* ¶ 33).

Plaintiff claims that GTA and Century Lending stopped payment of the check because of Plaintiff's Albanian descent.[1] (*Id.* ¶ 45). Plaintiff alleges that all Defendants conspired to frustrate his attempt to sell the property, resulting his the total loss of the property among other damages. (*Id.* ¶¶ 47, 51, 60).

II.     **ANALYSIS**

   A.     **Standard of Review**

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and in the alternative Rule 56(c). A Rule 12(b)(6) motion alleges that a complaint has failed to state a claim upon which relief can be granted. In evaluating such a motion, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations in the complaint as true, and "should not [grant the motion] unless is appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). "If, on a [motion to dismiss] . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be

---

[1] Plaintiff alleges six counts in his Complaint: Count I, violation of his right to contract under 42 U.S.C. § 1981 against Defendants Grace Title Agency, Inc., Century Lending Company, ISAOA, ATIMA; Count II, private conspiracy pursuant to 42 U.S.C. § 1985(3) against all Defendants; Count III, conversion against Defendants Grace Title Agency, Inc. and Marshon and Lesly Hollins; Count IV, breach of contract against Defendants Marshon and Lesly Hollins; Count V, fraud/fraudulent misrepresentation against Defendants Marshon and Lesly Hollins, Grace Title Agency, Inc., Century Lending Company, ISAOA, ATIMA; and Count VI, unjust enrichment against Defendants Marshon and Lesly Hollins, Grace Title Agency, Inc.

3

treated as one for summary judgement and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to represent all material made pertinent to such a motion by Rule 56." FED. R. CIV. P 12(b).

Pursuant to Rule 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the

non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990). Since Defendants rely upon evidence not included in the pleadings and because that evidence is essential to the Court's decision, the Court shall treat Defendants' Motion as a motion for summary judgment. *See Max Arnold & Sons v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

**B.     42 U.S.C. § 1981**

Plaintiff alleges Defendants frustrated his right to contract in violation of 42 U.S.C. § 1981. Section 1981(a) states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

5

Section 1981 defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

To establish a *prima facie* case under § 1981, Plaintiff must establish: (1) Plaintiff is a member of a protected class; (2) Plaintiff suffered an adverse action at the hands of Defendants in the context of his contractual relationship; (3) Plaintiff was qualified to continue the contractual relationship; and (4) Plaintiff was treated differently than any "similarly situated non-minority." *Bell v. Ohio Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted). The fourth element can also be replaced by "presenting credible, direct evidence of discriminatory intent." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

Defendants contend Plaintiff fails to establish his *prima facie* case because he cannot show that he was a member of a protected class or that he was treated any differently than any "similarly situated non-minority." Plaintiff argues he is a member of a protected class because of his Albanian descent, and Defendants treated him differently because of his accent.

The Court does not need to reach the issue of whether Plaintiff is part of a protected class. Plaintiff has failed to establish a *prima facie* case under § 1981 since he has presented no argument or evidence that he was treated differently than a similarly situated non-minority. Further, Plaintiff has not alleged any "direct evidence of discriminatory intent." Plaintiff appears to argue that

because he speaks with an accent Defendants discriminated against him. Plaintiff supports this position by citing to *Fonseca v. Sysco Food Services*, 374 F.3d 840 (9th Cir. 2004). In *Fonesca*, the plaintiff alleged he was discriminated against in the workplace because of his Hispanic race. *Id*. at 843-44. However, *Fonesca* is easily distinguishable from the case at bar. In *Forensca*, the court held that plaintiff had established a *prima facie* case of discrimination under Title VII and 42 U.S.C. § 1981. *Id*. at 849. Plaintiff alleged he had been laughed at and mocked for his accent. *Id*. at 844. He was also told that his accent was "weird." *Id*. Additionally, the plaintiff alleged that white employees were treated differently than him when they were given more overtime opportunities and were not disciplined for accidents with equipment as he had been. *Id*. at 849. The court held the plaintiff had alleged sufficient evidence of animus to establish a *prima facie* case. *Id*.

In the present case, Plaintiff has not alleged any facts on which this Court could conclude Defendants treated him differently than a non-minority. Unlike *Forensca*, where the plaintiff evidenced racial animus through disparate treatment and disparaging remarks regarding his accent, Plaintiff has done neither. Plaintiff appears to argue that GTA wrongly instructed him to pay certain closing costs after the Hollinses check for such costs was found to be bogus. Even assuming this to be true, such conduct alone does not show any discriminatory intent. Plaintiff has not alleged that Defendants (or GTA for that matter) made any comment regarding his accent, or his national origin. Plaintiff has also completely failed to allege that a non-minority was treated differently than he in the same or similar circumstances. In *Forensca*, the court held defendant's disparaging comments about the plaintiff's accent were "related to the alleged discriminatory treatment" suffered by plaintiff. *Id*. at 849. In contrast, Plaintiff has merely alleged an unfavorable outcome and his Albanian national origin. Plaintiff has plainly failed to relate or connect the two facts in his

7

Complaint or Response brief.[2]

"'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Bailey*, 106 F.3d at 145. In the present case, conclusory allegations are all that have been offered. Therefore, Plaintiff has failed to show there is any genuine issue of material fact as to whether Defendants acted on racial animus or treated non-minorities differently in the same or similar circumstances. Consequently, the Court holds that Plaintiff has failed to establish a *prima facie* case of discrimination under § 1981.

### C. 42 U.S.C. § 1985(3)

Plaintiff claims all Defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985(3). To state a valid claim pursuant to § 1985(3) Plaintiff must show:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protective of the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person was injured in his person or property or deprived of having and exercising any right or privilege of citizen of the United States.

*Vaklian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (citation omitted). Those actions which are alleged to have deprived the plaintiff of his property or civil rights, must be the result of class-based discriminatory animus. *Id*. "Furthermore, in order to demonstrate the necessary conspiracy, a plaintiff must allege specific acts or means by which the defendants were alleged to have conspired." *Haverstick Enter., Inc. v. Fin. Fed. Credit Inc.*, 803 F. Supp. 1251, 1259 (E.D. Mich. 1992).

---

[2] Plaintiff appears to rely upon *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516 (E.D. Penn. 2006), and *Fragante v. Honolulu*, 888 F.2d 591 (9th Cir. 1989), to support an argument that discrimination can be based upon a foreign accent. However, there are no significant similarities between Plaintiff's case and *Ladd* and *Fragante*. In *Fragante*, the court held the plaintiff was *not* qualified for a job where his accent made him difficult to understand. 888 F.2d at 596-97. In *Ladd*, the plaintiff was of Native American descent and never alleged he had an accent. 463 F. Supp. 2d at 518.

In the present case, Plaintiff has vaguely alleged all named Defendants conspired together to deprive Plaintiff of his property and his right to sell the property. (Resp. at 16). However, as demonstrated by the analysis *supra*, Plaintiff has not alleged any facts which would indicate the failure of his property closing was a result of racial animus on the part of Defendants. Moreover, the Defendants have produced a warranty deed which evidences that Plaintiff retained the property and later sold it, indicating Plaintiff's assertion that Defendants have "stolen" his property is without merit. (Reply, Ex. C, Warranty Deed & Resp. at 3).

In sum, Plaintiff has failed to show Defendants acted upon a racial animus. Similar to Plaintiff's claim under § 1981, mere conclusory allegations cannot manufacture genuine issues of material fact and this claim is denied. *See Bailey*, 106 F.3d at 145.

### D. State Law claims of Fraud and Fraudulent Misrepresentation

Under Michigan law, the elements of fraud are: (1) the defendant made a material misrepresentation; (2) the representation was false; (3) defendant knew it was false when he made it, or made it recklessly, without any knowledge of its truth; (4) the Defendant made it with the intention that it should be acted upon by Plaintiff; (5) the Plaintiff acted in reliance upon it; and (6) the Plaintiff thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). Under Federal Rule of Civil Procedure 9(b) claims of fraud or fraudulent misrepresentation must be pled with particularity. The Sixth Circuit has held that this requires a plaintiff to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the Defendants; and the injury resulting from the fraud." *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1395 (W.D. Mich. 1992) (citation omitted).

In the present case, Plaintiff's state law claim fails because he has not alleged any fraudulent

9

intent of Defendants or any misrepresentation by Defendants. Plaintiff lists six misrepresentations made by the Hollinses, with whom Plaintiff alleges Defendants acted in "concert." (Compl. ¶ 79(a)-(f)). Plaintiff does not ever allege how or why Defendants "acted in concert." Interestingly, Plaintiff states in his Response "Representations were made by Defendants Century Lending Company, that they would qualify the Hollinses for the mortgage loan, which they did, and utilize Grace Title Company as the title company for this transaction, which they did and Plaintiff relied." (Resp. at 19). Therefore, the Plaintiff himself, acknowledges those representations made by Defendants were *not* false.

Further, Plaintiff alleges that "all defendants herein have benefited [sic] from Plaintiff's lack of knowledge with respect to American real estate transactions and Plaintiff's language barriers." (*Id*. at 21). However, this Court finds that Defendants did not, nor could they, gain from the alleged misrepresentation. Plaintiff does not allege Defendants kept the property nor received any compensation for it. Plaintiff only alleges the Hollinses kept the property. Finally, it appears in light of Plaintiff retention and subsequent sale of the property in question, he has not suffered an injury as a result of the alleged misrepresentation. In light of these facts, the Court finds that Plaintiff has failed to allege his fraud claim with the specified particularity.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

10

```
                          s/Paul D. Borman
                          PAUL D. BORMAN
                          UNITED STATES DISTRICT JUDGE
```

Dated: September 28, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 28, 2007.

```
                          s/Denise Goodine
                          Case Manager
```